NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| A&B INGREDIENTS, INC. : | | |
| : | Civil Action No. 08-6264 (SRC) | |
| Plaintiff, : | | |
| : | | |
| v. : | OPINION | |
| : | | |
| HARTFORD FIRE INSURANCE : | | |
| COMPANY : | | |
| : | | |
| : | | |
| Defendant. : | | |
| : | | |

**CHESLER, U.S.D.J.**

This matter comes before the Court on the motion for summary judgment filed by Defendant Hartford Fire Insurance [docket item no. 45]. Plaintiff has opposed this motion [docket item no. 49] and also moved for summary judgment [docket item no. 48]. After consideration of the parties' briefing, the Court has determined that it will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment. In the following discussion, the Court gives its reasons for the decision.

I.   FACTUAL BACKGROUND

Laboratorios Miret, S.A. ("Lamirsa") and Vedeqsa, Inc. filed a complaint against A&B Ingredients ("A&B") in the Southern District of New York on May 13, 2008. In that complaint Lamirsa and Vedeqsa allege: 1) infringement of the '769 patent; 2) infringement of the '679 patent; 3) unfair competition; and 4) theft of trade secrets.

Lamirsa develops specialty chemical products, including antimicrobial products,[1] one of which is Lauric Arginate ("LAE"). Lamirsa alleged it invented novel methods of producing and using LAE. A&B promotes, manufactures, and sells a preservative that includes LAE. In 2004, A&B approached Lamirsa about becoming a distributor in the U.S. of LAE based food preservatives. The parties executed a letter of intent in 2004, which included a confidentiality provision barring A&B from using or disclosing Lamirsa's proprietary information, including the LAE trade secrets. Lamirsa alleged that "A&B improperly associated itself with Lamirsa's LAE product and promoted itself as the distributor of Lamirsa's LAE product in the U.S. manufactured using Lamirsa's patented process and promoted itself as knowledgeable in the use of Lamirsa's LAE trade secrets" and that "A&B began selling its own version of Lamirsa's LAE product to the same customers. . . ."

A&B, in turn, filed the instant action against its insurer, Hartford Fire Insurance Company, seeking reimbursement of its attorney's fees in the underlying action. Hartford issued to A&B several commercial general liability insurance policies for the period including August 10, 2005 through August 10, 2009. Each policy contained similar language and covered "personal and advertising injury." The language of the agreement states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . . . This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.[2]

---

[1] Antimicrobial products or agents are used as a preservative to reduce the possibility of food borne illness by controlling the risk of microbial contamination.

[2] Relevant definitions include: 1) "personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses: oral, written or electronic publication of material that violates a person's right of privacy;

The insurance does not apply to: 1) the knowing violation of rights of another.  In other words, the policy will not cover "personal and advertising injury" arising out of an offense committed by, at the direction, or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury"; 2) breach of contract.  The policy will not cover "personal and advertising injury" arising our of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement" or on "your web site"; 3) infringement of intellectual property rights.  The policy will not cover "personal and advertising injury" arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.  However, this exclusion does not apply to infringement, in your "advertisement" or on "your web site", of 1) copyright; 2) slogan; or 3) title of any literary or artistic work.

After receiving the complaint against it, A&B requested that Hartford defend A&B and also reimburse A&B for its defense, settlement and indemnity costs.  Hartford refused, stating that "the amended complaint does not present a claim for "bodily injury" or "property damage" arising out of an "occurrence" or for "personal and advertising injury" caused by an "offense." They claim that the allegations of patent infringement, unfair competition and theft of trade secrets do not fall within the scope of coverage provided by "personal and advertising injury." A&B disagrees,

---

copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement"; infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your website"; 2) "advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through . . . any [] publication that is given widespread public distribution.  However, "advertisement" does not include: the design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or an interactive conversation between or among persons through a computer network.

asserting that the claims brought against it fall within the coverage of the policy

II.  DISCUSSION

    A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the non-moving party. *See Boyle v. Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 247-48. Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered

by the movant," but rather "must exceed the 'mere scintilla' threshold"), *cert. denied*, 507 U.S. 912 (1993)).

### B. Duty to Defend

An insurer's duty to defend is based on whether the allegations in the underlying complaint trigger any of obligations set forth in the insurance policy. *W9/PHC Real Estate LP v. Farm Family Cas. Ins. Co.*, 407 N.J. Super. 177, 191 (App. Div. 2009) citing *The Ohio Cas. Ins. Co. v. Flanagin*, 44 NJ 504, 512 (1965). The allegations asserted against the insured must be compared with the policy language. *Vorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 173 (1992). If the language corresponds, "the duty to defend arises, irrespective of the claim's actual merit." *Id*. The insured bears the burden of establishing that the claim falls within the terms of the policy. *Rosario v. Haywood*, 351 N.J. Super 521, 529 (App. Div. 2002). In contrast, where the carrier asserts that the underlying dispute falls within the exclusionary provisions, it bears the burden of establishing this claim. *Hartford Accident & Indem. Co. v. Aetna Life Ins. Co.*, 98 N.J. 18, 26 (1984). As an initial matter, any doubt regarding the duty to defend must be resolved in favor of the insured. *Id*. at 175.

A&B argues that the underlying complaint falls within the scope of the policy's "personal and advertising injury" coverage. A&B relies on two provisions of the policy in making this argument. First, A&B claims that the underlying complaint alleges that A&B has copied Lamirsa's advertising idea. Second, A&B claims that the complaint also alleges that A&B has published "material that violates a person's right of privacy."

### 1. Advertising Idea

Regarding A&B's alleged copying of Lamirsa's advertising idea, the policy language is dispositive. In relevant part, "personal and advertising injury" is defined as injury arising out of

"[c]opying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".[3]  "Advertising idea" is further defined as "any idea for an 'advertisement.'"[4]  Finally, "advertisement" is defined as "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through: (a) (1) Radio; (2) Television; (3) Billboard; (4) Magazine; (5) Newspaper; or (b) Any other publication that is given widespread public distribution."[5]

New Jersey courts have held that where a claim for coverage under an alleged "advertising injury" arises, there must be some discrete advertisement underlying that claim. *Info. Spectrum, Inc. v. Hartford*, 364 N.J. Super. 54, 66 (App. Div. 2004), *aff'd*, 182 N.J. 34 (2004).  On this point A&B has not carried its burden.  The policy requires "*widespread* public dissemination" (emphasis added) in order to constitute an advertisement.  There is no indication that any of the media described above were used in promoting the product.  Moreover, the underlying complaint provides no support for the notion that the dissemination of information at issue was *widespread*.  A&B has therefore failed to demonstrate that the allegations trigger coverage under the policy and no duty to defend can be imposed on these grounds.[6]

---

[3]General liability policy between Hartford and A&B ("Policy"), Section V, 17(f).

[4]Policy, Section V, 2.

[5]Policy, Section V, 1.

[6]Even if the Court were to find that the underlying complaint implicated an "advertisement," the only "advertising idea" possibly at issue is the use of Lamirsa's name in promoting the product.  While Plaintiff cites a single case where the use of a name ("Lipitor") was found to constitute an "advertising idea," (Pl.'s Br. at 15) that case is easily distinguished.  Though the court in *Albers Medical* did find that the insured's use of the name Lipitor in its advertising constituted an "advertising injury," it was also clear that "Lipitor" was a trademark. *The Ohio Cas. Ins. Co. v. Albers Med., Inc.*, No. 03-1037, 2005 WL 2319820, at *1 (W.D. Mo. Sept. 22, 2005).  In the instant case, trademark infringement is specifically excluded from policy coverage. Policy, Section I, Coverage B, 2(I).

## 2. Right of Privacy

A&B contends that Lamirsa's unfair competition claim alleges facts that invoke coverage under the Policy. Essentially A&B suggests that allegations regarding A&B's communication of Lamirsa's confidential information constituted a violation of the latter's right of privacy. The relevant policy language reads: "'Personal and advertising injury' means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:... (e) Oral, written or electronic publication of material that violates a person's right of privacy."[7]

The cases cited by Plaintiff in support of their argument are easily distinguished. (Pl.'s Br. at 19-20 (docket entry no. 46)). In determining the scope of coverage relating to the right of privacy, all three cases note that the policy itself provides no limitations. *Id.*; *LensCrafters, Inc. v. Liberty Mut. Fire. Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at 10 (N.D. Cal. Jan. 20, 2005); *Park Univ. Enters. v. Am. Cas. Co. of Reading*, 314 F. Supp. 2d 1094, 1109 (D. Kan. 20040; *Hooters v. Am. Global Ins. Co.*, 157 F. App'x 201, 205-06 (11th Cir. 2005). The critical distinction is that this policy limits personal and advertising injury coverage to common law claims of invasion of privacy.[8] In addition, Hartford points out that there is no common law right of privacy in New York. *Freihofer v. Hearts Corp.*, 65 N.Y.2d 135, 140 (1985).[9] In *Hooters* the court looks to the law that governs the underlying complaint to see if the allegations "at least arguably" state a claim for relief. *Hooters*, 157 F. App'x at 205. Even if all the allegations were sustained, no invasion of privacy claim would remain in the underlying action. Therefore,

---

[7]Policy, Section V, 17(e).

[8]"This insurance does not apply to:...'Personal and advertising injury' arising out of the violation of a person's right of privacy created by any state or federal act." Section I, Coverage B, 2(q)

[9]Lamirsa brought its unfair competition claim under New York common law.

Harford similarly has no duty to defend on these grounds.

### III. CONCLUSION

For the foregoing reasons, this Court will grant summary judgment in favor of Defendant, and deny the A&B's motion for summary judgment. An appropriate form of order will be filed together with this Opinion.

                                                    s/Stanley R. Chesler
                                                  STANLEY R. CHESLER
                                                  United States District Judge

DATED: December 8, 2010